RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 6 / 10 / 13
          JDB

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

BERNEL J. SEMIEN,                          CIVIL ACTION
    Appellant                              NO. CV12-02179

VERSUS

CAROLYN W. COLVIN, ACTING              JUDGE JAMES T. TRIMBLE
COMMISSIONER OF SOCIAL SECURITY,[1]    MAGISTRATE JUDGE JAMES D. KIRK
    Appellee

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Bernel J. Semien filed an application for disability insurance benefits ("DIB") on January 13, 2010, alleging a disability onset date of April 24, 2009 (Tr. p. 85/267) due to "lupus, high blood pressure, colostomy bag" (Tr. p. 103/267). That application was denied by the Social Security Administration ("SSA") (Tr. p. 48/267).

An administrative hearing was held before an administrative law judge ("ALJ") on February 10, 2011, at which Semien appeared with his attorney and a vocational expert ("VE") (Tr. p. 19/267). The ALJ found that, although Semien suffers from severe impairments of status post-rectal cancer (Tr. p. 12/267), he has the residual function capacity to perform the full range of sedentary work except that he cannot climb ladders, ropes or scaffolds, he can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, he is limited to less than occasional exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas, and he requires work that is in a covered area to keep him

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.

out of the sun and that is not exposed to water without appropriate wet weather clothing (Tr. p. 13/267). The ALJ concluded that, since Semien can still perform his past relevant work as a receptionist, he was not under a disability as defined by the Social Security Act at any time from April 24, 2009 through the date of the ALJ's decision on May 24, 2011 (Tr. p. 15/267).

Semien requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Semien next filed this appeal for judicial review of the Commissioner's final decision. Semien raises the following issues for review on appeal (Doc. 8):

>    1. The ALJ's decision regarding Semien's ability to return to his past work is ambiguous and unsupported by substantial evidence of record.
>
>    2. The ALJ erred in relying on the testimony of the vocational expert and concluding that the claimant is capable of performing his past work.

Semien filed a brief (Doc. 8) to which the Commissioner responded (Doc. 9). Semien's appeal is now before the court for disposition.

<u>Eligibility for DIB</u>

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(I), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or

2

mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

Summary of Pertinent Facts

Semien was 57 years old at the time of his 2011 administrative hearing, had a high school education, had trade school training as an automotive mechanic, and had worked for an oilfield company from 1978 through April 24, 2009 (Tr. pp. 85, 104-105/267).

1. Medical Records

Semien was found to have a rectal tumor in July 2005 (Tr. pp. 186-188/267) (Tr. p. 249/267). Semien chose to undergo chemotherapy and radiation followed by resection of the rectal tumor (Tr. p. 249/267). The tumor was removed from Semien's rectum and was found to be adenocarcinoma;[2] a polyp was also removed from his colon (Tr. pp. 237-240/267).

CT and PET scans in May 2006, June 2007, July 2007, October 2007, and August 2008 were negative for recurrent or metatastic neoplasm (Tr. pp. 178, 179, 180, 181-182, 183/267).

Semien was examined in November 2008 by Dr. H. Randolph

---

[2] Adenocarcinoma is a malignant tumor originating in glandular epithelium. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Adenocarcinoma, *available at* http://www.merriam-webster.com/medlineplus/adenocarcinoma (a service of the U.S. National Library of Medicine and the National Institutes of Health).

Bailey, for a three-year followup after his abdominoperineal resection three years before (Tr. p. 141/267). Dr. Bailey found Semien was doing quite well overall; he had no complaints or drainage, there were no abdominal masses, the stoma looked fine, and the perineal wound was well healed (Tr. p. 141/267).

In early May 2009, Semien's infusaport catheter broke and Semien underwent surgery to remove a fragment (Tr. pp. 174-176/267). Semien was examined by Dr. James Maze on May 14, 2009, for a check-up (Tr. p. 139/267). Dr. Maze noted that Semien weighed 152 pounds, his blood pressure was 151/68, his recent PET scan was negative, his colostomy was open, and he did not have any problems (Tr. pp. 139/267).

Dr. Bailey re-examined Semien in June 2009 and found his colostomy was functioning without difficulty and the incision was well healed (Tr. p. 141/267). Semien's prescriptions for Plavix, Prevacid, baby aspirin and calcium with D were continued (Tr. p. 172/267). A CT scan of Semien's pelvis and abdomen showed no significant abnormal new findings (Tr. p. 173/267).

In May, June and September 2009, Semien was treated for hypertension and hypercholesterolemia (Tr. pp. 160-162/267). In December 2009, Semien was 5'9" tall, weighed 152 pounds, and his blood pressure was 124/68 (Tr. p. 159/267). Semien was referred to the dermatology clinic for skin lesions running down his forearm (Tr. pp. 159, 161/267). Semien was diagnosed with hypertension,

4

hypercholesterolemia, and lupus[3] (Tr. pp. 15/267).

Semien had a colonoscopy in December 2009 and three polyps were removed (Tr. pp 143-144/267). Semien was noted to be 55 years old and weighed 155 pounds (Tr. pp. 145-267). Semien was prescribed a high fiber diet, and chemoprevention with calcium and aspirin (Tr. p. 144/267).

A CT scan of Semien's pelvis and abdomen in January 2010 showed no evidence of a recurrent or metastatic neoplasm (Tr. pp. 164-165, 169-170/267).

A physical residual functional capacity form was filled out by Dr. Johnny B. Craig, an oncologist, in February 2010 (Tr. pp. 256-263/267). Dr. Craig found Semien can lift up to 20 pounds occasionally, up to 10 pounds frequently, stand/walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, do unlimited pushing and pulling with hands or feet, can occasionally climb ramps or stairs, can never climb a ladder, rope or scaffold, and can occasionally balance, stoop, kneel, crouch, or crawl (Tr. pp. 258-263/267).

2. 2011 Administrative Hearing

At his administrative hearing, Semien testified that, other than his rectal cancer, he has been diagnosed with lung cancer and had surgery to remove the upper lobe from his right lung (about 1/3

---

[3] Lupus refers to any of several diseases (such as lupus vulgaris or systemic lupus erythematosus) characterized by skin lesions. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Lupus, *available at* *http://www.merriam-webster.com/ medlineplus/lupus* (a service of the U.S. National Library of Medicine and the National Institutes of Health).

of the lung) in September 2010 (Tr. pp. 22-23/267). Semien testified that he started having shortness of breath and general weakness with difficulty lifting things in April 2009, his lung cancer was found in August 2010 (Tr. pp. 30-31/267). Semien testified that he was not undergoing chemotherapy because the doctors thought his lung cancer had been contained (Tr. p. 23/267). Semien's attorney informed the ALJ that they did not have the medical records from the lung cancer yet (Tr. p. 22/267).[4]

Semien testified that he still has shortness of breath and difficulty lifting things (Tr. p. 32/267). Semien also testified that he feels tired all of the time (Tr. p. 32/267). Semien testified that his doctor told him to avoid fumes, and that odors such as perfumes or gasoline bother him (Tr. pp. 41-42/267).

Semien testified that he was diagnosed with lupus in the 1980's (Tr. p. 38/267), for which he is prescribed a cream, and told to wear sunblock and stay out of sunlight and lights in the house as much as possible (Tr. pp. 32-33/267). Semien testified that light causes the lupus to return and make itchy bumps on his skin (Tr. p. 33/267).

Semien also testified that he takes medication to control his cholesterol and blood pressure; he gets a headache if he does not take his blood pressure medication every day (Tr. pp. 33-34/267).

---

[4] The ALJ stated that Semien's attorney had 20 days to file Semien's medical records relating to his lung cancer and lupus, as well as his medication list (Tr. pp. 39, 43-44/267). Those records were never submitted. However, it is noted that the ALJ incorporated the functional limitations from lupus and lung cancer to which Semien testified.

6

Semien testified that he can lift about 15 pounds, and walk very little because of shortness of breath (Tr. pp. 27-28/267). Semien testified that he is not supposed to get his colostomy bag wet and he has to check it periodically (Tr. pp. 39-40/267).

Semien testified that he last worked on April 24, 2009; Semien testified that he had been working in an office, answering the phone, doing inventory work, and doing a little computer work, since 2005 (Tr. p. 25/267).

Semien testified that, when he turned 55 years old, he was offered early retirement, which he refused, so he was told he would be laid off (Tr. pp. 26-27/267). Semien's employer advised him to apply for short-term disability, which he did and received for six months on the basis of having had rectal cancer and a colostomy (Tr. pp. 28, 31/267). When the short-term disability ended, Semien was advised to apply for long-term disability, but that application was denied (Tr. p. 28/267). Semien testified that, when he appealed the denial of long-term disability, he was offered a sum of money to drop the case, but he refused the money (Tr. pp. 28-29/267).

Semien testified that he was originally hired as a utility hand, of which there are five grades (Tr. p. 34/267). When Semien underwent surgery in 2005, he was a grade 5 utility hand (the highest grade) (Tr. p. 34/267). Semien testified that he was out of work for thirteen weeks due to his rectal cancer surgery; when he returned to work, he was put in an office to answer the phone, make tickets, take orders, do a little computer work, walk through

the warehouse and check inventory, and take care of truck logs and fuel receipts (Tr. pp. 34-36/267). Semien also supervised six people who were driving trucks and working in the yard (Tr. pp. 36-37/267). Semien testified that his job title changed from grade 5 utility worker to "truck driver A," although very little driving was involved (twice a month, very short distances) (Tr. pp. 35, 38/267). Semien testified he was told that, although he had risen as high as he could as a grade 5 utility worker, he could continue to climb and get raises as a "truck driver A" (Tr. pp. 35-36/267). Semien testified that job had been created for him due to his rectal cancer, and he had received a large raise because he was put in charge of six other people (Tr. pp. 25-26/267).

The VE testified that Semien's past work as a utility hand/truck driver was medium duty, semi-skilled, SVP 4 (Tr. p. 40/267). The VE testified that Semien's "truck driver A" work (the job after 2005) was actually two jobs: the receptionist work was sedentary, SVP 4, semi-skilled, and the inventory clerk work was light duty, SVP 5, lower-level skilled (Tr. pp. 40-41/267).

The ALJ posed a hypothetical involving someone of Semien's age, education and work experience, who can do no more than sedentary work, can occasionally climb ramps or stairs, can never climb ladders, ropes, or scaffolds, can only occasionally balance, stoop, kneel, crouch or crawl, and who must work in a covered area that is not exposed to sun or water without appropriate wet weather clothing (rain gear) (Tr. p. 41/267). The VE testified that such a person could work as a receptionist (Tr. p. 41267). The VE

testified that a receptionist has skills in answering the telephone, relaying the information received from the phone call, and then routing information accordingly (Tr. p. 43/267).

The ALJ posed a second hypothetical to add to the original hypothetical the condition that the person is markedly limited in his ability to concentrate, persist, or maintain pace (Tr. p. 41/267). The VE testified there would not be any jobs such a person could do (Tr. p. 41/267).

The ALJ then added to the original hypothetical the condition that the person could have less than occasional exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas (Tr. p. 42/267). The VE testified that such a person could still work as a receptionist since that work is done indoors (Tr. p. 42/267).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Semien (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and

terminates the analysis.  <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984 (1995), citing <u>Lovelace v. Bowen</u>, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. <u>Greenspan</u>, 38 F.3d at 237.

In the case at bar, the ALJ found that Semien has not engaged in substantial gainful activity since April 24, 2009, that he has disability insured status through December 31, 2013, and that he has a severe impairment of "status post rectal cancer," but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. pp. 12-13/267). The ALJ then found that, from April 24, 2009 through the date of the ALJ's decision on May 24, 2011, Semien was still able to perform his past relevant work as a receptionist (Tr. pp. 15-267). The sequential analysis thus ended at Step 4, with a finding that Semien was not disabled (Tr. p. 21).

<u>Scope of Review</u>

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether

there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988);

Dellolio, 705 F.2d at 125.

## Law and Analysis

Semien contends the ALJ's decision regarding Semien's ability to return to his past work is ambiguous and unsupported by substantial evidence. Semien also contends the ALJ erred in relying on the testimony of the vocational expert and concluding the claimant is capable of performing his past "composite" job.

Initially, the burden is on the claimant to demonstrate that he cannot perform his previous work, that he is unable to engage in substantial employment, and that he meets the duration requirement. Chaparro v. Bowen, 815 F.2d 1008, 1010 (5th Cir. 1987). It is only if the claimant proves that he is unable to engage in his past relevant work (Step 4) that the burden of proof shifts to the Commissioner to show the claimant is able to perform some other type of substantial work in the economy (Step 5). Greenspan v. Shalala, 38 F.3d 232 (5th Cir. 1994); Scott v. Heckler, 770 F.2d 482, 484 (5th Cir. 1985); Ferguson v. Schweiker, 641 F.2d 243, 246 (5th Cir. 1981). To show that he cannot engage in his past relevant work, the claimant must show an inability to return to his previous work, i.e. occupation, and not simply to his specific prior job. DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983), citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981).

When determining whether or not a claimant retains the residual functional capacity to perform his past relevant work, the ALJ can look to either (1) the job duties peculiar to an individual job as the claimant actually performed it or (2) the functional

12

demands and job duties of the occupation as generally required for employees throughout the national economy. SSR 82-61. Also, Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

Semien contends that the ALJ stated in his decision that "the claimant was diagnosed with rectal cancer in 2005. The claimant also suffers from hypertension and Lupus. Based on the claimant's medical impairments, he is not able to return to his prior work, which was *made, manufactured, and composed for him*" (Tr. p. 13/267). (Emphasis added.) Semien contends the ALJ then found, inconsistently, that Semien is capable of performing his past relevant work as a receptionist (Tr. p. 15/267), despite the fact that he had already found that job had been made up for Semien, and that the ALJ erred in relying on the VE's testimony at Step 4.

"[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case. For those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, *it may be necessary to utilize the services of a vocational specialist or vocational expert.*"[5] (Emphasis added.) SSR 82-61; Adams v. Astrue, 2009 wl 774845, *7 (W.D.La. 2009). Also, Armstrong v. Sullivan, 814 F.Supp. 1364, 1372 (W.D.Tex. 1993), citing Paige v. Bowen, 695 F.Supp. 975, 980-981 (N.D. Ill. 1988), and Taylor v. Bowen, 664 F.Supp. 19, 23 (D.Me. 1987). Therefore, the ALJ may

---

[5] "DOT" refers to the Dictionary of Occupational Titles.

13

consult a VE to determine the proper characterization of the claimant's past work, and whether the claimant can return to his past relevant work as he actually performed it or whether he can perform the work as it is generally performed in the national economy. See Adams, 2009 wl 774845, *8. Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony. Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

The ALJ's statement that Semien's job was "made, manufactured, and composed for him," was referring to the fact that, as the VE testified, Semien's past job was actually two kinds of work- receptionist and inventory clerk. Although Semien's job title was "truck driver A," Semien testified he did very little driving. Therefore, the VE found Semien's work (after 2005) was properly characterized a receptionist/inventory clerk. The VE testified that past work as a receptionist was sedentary work and that, given the restrictions of the ALJ's hypothetical, Semien could still work as a receptionist. Since the inventory clerk component of Semien's past work was light level work, Semien could no longer do his past work as he actually performed it, but could perform his past work as a receptionist as it is generally performed in the national economy.

Therefore, in finding that Semien can still do his past work as a receptionist, the ALJ was not suggesting that Semien could return to his old job as a receptionist/inventory clerk, but rather was stating that Semien has the residual functional capacity to

work as a receptionist as that work is generally performed in the national economy, as testified to by the VE. The ALJ's finding that Semien can do his past relevant work as a receptionist, as it is generally performed in the national economy, is not inconsistent with his previous finding that Semien's past work was "made, manufactured, and composed for him." Thus the ALJ's analysis ended at Step 4, with the finding that Semien can still perform his past relevant work as a receptionist. Compare, Adams, 2009 wl 774845 at *7-*8.[6] Semien has not argued that he cannot perform all of the duties of receptionist work as it is generally performed in the national economy.

It is noted again that Semien did not file any medical evidence to show he suffers from lung cancer and lupus, the treatments he is undergoing for those diseases, and any functional limitations arising from those conditions and treatments. The subsequent deterioration of a claimant's previously non-disabling condition may form the basis of a new claim. Johnson, 767 F.2d at 183. Also, Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

---

[6] Semien cites Armstrong v. Sullivan, 814 F.Supp. 1364, 1372 (W.D.Tex. 1993), Paige v. Bowen, 695 F.Supp. 975, 980-981 (N.D. Ill. 1988), and Taylor v. Bowen, 664 F.Supp. 19, 23 (D.Me. 1987) to support his argument that the VE and ALJ erred in splitting his past work into two jobs. However, none of those cases are binding precedent. Moreover, the court in Armstrong failed to consider the VE's testimony as to how the cashier part of claimant's composite "cashier/cook" job is generally performed in the national economy. In Taylor, the court failed to distinguish the separate types of jobs in claimant's composite job of "receptionist/general office clerk" and consider how each is generally performed in the national economy. In Paige, the court found the ALJ erred in failing to use a VE in considering the claimant's composite job of "security guard/hospital entrance attendant."

Therefore, Semien may file a new claim based on all of his medical conditions, with the appropriate supporting medical evidence.

Therefore, substantial evidence supports the ALJ's conclusion that Semien can perform his past relevant work as a receptionist.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Semien's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN fourteen(14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 7th day of June 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE